CHARLES FRAZER & another *vs.* WILLIAM A. FULLER
& others.

Worcester.  October 21, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Great Pond.*

In an action for an alleged trespass in maintaining an ice run, over land leased to the plaintiff covered with water and adjoining a great pond whose limits had been extended artificially, it was *held* that the conflicting evidence in the case warranted a finding that the line of the pond as it originally existed adjoined land to which the defendant's lessor had acquired title by prescription, and that a verdict for the defendant was justified.

TORT, against William A. Fuller, and William H. Martin and James A. Martin, the last two alleged to be co-partners, doing business under the name of Martin Brothers, for alleged breaking and entering of the plaintiffs' close, and cutting and carrying away a quantity of ice.  Writ dated January 24, 1901.

In the Superior Court the case was tried before *Bell,* J.  The plaintiffs were ice dealers in the town of Clinton.  The defendants Martin also were ice dealers in that town.  The defendant Fuller was a lumber dealer, who, as contended by the plaintiffs, furnished the materials or money for the construction of the runway complained of.  The plaintiffs claimed title under a deed from Nathaniel Rice to the Clinton Company, dated January 3, 1850.  On November 20, 1863, the Clinton Company conveyed the plaintiffs' premises to the Bigelow Carpet Company and on January 1, 1901, the Bigelow Carpet Company leased them to the plaintiffs.  The defendants Martin claimed title under a lease from Kate and Eliza Durkin, dated November 18, 1900, as to a portion of the premises, and alleged that the rest was part of a great pond.  The Durkins' claim of title to the premises on which the alleged trespass was committed was by prescription. The plaintiffs' leased premises contained one acre and one thousand two hundred and two square feet of land, most of which, at the date of the defendants' lease, was covered by the waters of Mossy Pond.

It appeared in evidence and was agreed, that in the autumn of 1847 the Clinton Company, acting under the mill-acts, raised the dam at their mill, now the mill of the Bigelow Carpet Company, eight and forty-one one hundredths feet, and that Mossy Pond, before the raising of the dam in 1847, was a natural pond of more than twenty acres. It also appeared that in 1900 and January, 1901, the defendants constructed an ice house on the land covered by their lease and outside of the land contained in the plaintiffs' lease, and built a run for conveying their ice from the pond into the ice house, connecting with the ice house and extending down to and into the water. This run extended from eighty to ninety feet over the land covered with water described in the plaintiffs' lease, and was part of the trespass complained of.

The plaintiffs contended, first, that Fuller was a joint tort-feasor with the Martins in the trespass complained of; second, that the part of the land included in their lease and now covered by water was not part of a great pond; that though Mossy Pond, before the raising of the Clinton Company's dam in 1847, was a great pond containing more than twenty acres, yet the land in dispute, before the raising of the dam, and while it was owned by Nathaniel Rice, was dry or marshy land in 1847, and that raising the dam did not make the leased premises, so covered by water, a part of a great pond; that Nathaniel Rice's deed conveyed title to the land under the water, that the Clinton Company's title inured to the plaintiffs through the carpet company's lease, and that none of the rights of the public in great ponds attached to the disputed premises.

The defendants contended, that the Durkins had occupied a part of the land on which the alleged trespass was committed down to low water mark for more than twenty years under a claim of title; that the remaining portion of the plaintiffs' leased land on which the alleged trespass was committed, now covered by water, was a part of the original great pond in which the public have the rights which attach to great ponds in this Commonwealth. The plaintiffs denied both of these contentions.

The evidence was conflicting. The plaintiffs asked the judge to instruct the jury that on the evidence the verdict must be for the plaintiffs, with at least nominal damages against the defend-

ants Martin, and also against the defendant Fuller. The judge refused to make these and other rulings requested by the plaintiffs.

The jury returned a verdict for the defendants; and the plaintiffs alleged exceptions.

*H. Parker & J. Smith,* for the plaintiffs.

*C. G. Bancroft, A. G. Buttrick & O. L. Stone,* for the defendants.

HAMMOND, J. The principal question is whether any part of the ice run was upon or over land of the plaintiffs. The plaintiffs had a lease which in terms described land over which the run was built, but the answer of the defendants was that in fact the plaintiffs had no title to the land because a part of it was included within a great pond, and as to the rest the defendants had a title by disseisin. In other words the defendants claimed title by disseisin as far as the edge of the pond, and denied that the plaintiffs had any title under the lease to the land forming part of the pond.

The evidence as to whether there was any title by disseisin to any part of the land described in the plaintiffs' lease and as to the original boundaries of the pond was conflicting. The rules of law applicable to these questions were explained to the jury, and at the close they were instructed in substance that if the line of the pond as it originally existed met the line to which the defendants' title by prescription extended, so that under the runway there was no intervening land between the two lines, then their verdict should be for the defendants. It is now strenuously argued by the plaintiffs that there was no evidence which would justify the jury in finding that the two lines did thus meet.

Without rehearsing the evidence in detail it is sufficient to say that after a careful perusal of it we are of opinion that it is sufficient to justify the verdict. The case was properly submitted to the jury under instructions which were full, apt and clear, and we see no error in the manner in which the judge dealt with the plaintiffs' requests for instructions upon this branch of the case.

The exceptions with reference to the relation of William A. Fuller were not argued before us, and they are therefore deemed to be waived.

*Exceptions overruled.*